UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT PADUCAH
CRIMINAL ACTION NO. 5:17-CR-00039-TBR

UNITED STATES OF AMERICA,                                                                   PLAINTIFF

v.

JERMAINE TYRONE JONES,                                                                      DEFENDANT

**MEMORANDUM OPINION & ORDER**

This matter is before the Court on Defendant Jermaine Tyrone Jones's Motion to Suppress. (R. 20). Jones seek to suppress all evidence, including a Hi Point .380 caliber firearm, directly or indirectly obtained from his warrantless stop, detention, and arrest on August 30, 2017. (R. 20). The Court conducted a suppression hearing on July 23, 2018. The United States produced evidence through the direct testimony of Paducah Police Officer Andrew Parrish. Jones produced his evidence through cross-examination of Officer Parrish. Both Parties introduced as evidence video footage from Officer Parrish's body camera.

At the suppression hearing's conclusion, the Court ordered additional briefing on the matter. Accordingly, Jones has filed Defendant's Memorandum in Support of Motion to Suppress (R. 35), and the United States has responded with its Memorandum in Opposition to Defendant's Motion to Suppress. This matter is now ripe for adjudication. For the reasons that follow, the Court **GRANTS** Jones's Motion Suppress. (R. 20).

BACKGROUND

    A. The Domestic Disturbance Call

On August 30, 2017, Paducah Police Officer Andrew Parrish responded to a disturbance at Ms. Mckinney's residence on Farwood Drive. (Government's Ex. 1). Once there, Ms. McKinney told Officer Parrish that she had been involved in a dispute with her ex-boyfriend, Defendant Jermain Tyrone Jones. (Government's Ex. 2 - AXON_Body-Video 2017-08-03_1236). She told Officer Parrish that she had arrived home from work to find Jones in her home. (Government's Ex. 2 - AXON_Body-Video 2017-08-03_1236). When McKinney asked Jones to leave, he refused. According to McKinney, they then got in an altercation that resulted in Jones throwing a dish soap bottle at her, which struck her in the back. (Government's Ex. 2 - AXON_Body-Video 2017-08-03_1236). McKinney then ran outside where Jones threw cans of sprite at her. (Government's Ex. 2 - AXON_Body-Video 2017-08-03_1236). McKinney said that she was able to dodge the cans, but they had struck and damaged her car. (Government's Ex. 2 - AXON_Body-Video 2017-08-03_1236). At this point, McKinney claims that she fled the immediate area while calling the police. (Government's Ex. 2 - AXON_Body-Video 2017-08-03_1236). When she got back, she witnessed Jones leaving in a "Tahoe-like vehicle with a long body" driven by Mr. Snipes, Jones's friend. (Government's Ex. 2 - AXON_Body-Video 2017-08-03_1236). Upon Parrish probing McKinney's story, she added that at some point her brothers had come and got into a physical altercation with Jones, but they too had left. (Government's Ex. 2 - AXON_Body-Video 2017-08-03_1236). Officer Parrish informed McKinney that Jones was legally considered a resident of the house and that if she wanted him to leave, she would have to go downtown to initiate a formal eviction process. (Government's Ex. 2 - AXON_Body-Video 2017-08-03_1236). Parrish further instructed McKinney that she would have to go downtown to

press criminal charges against Jones. (Government's Ex. 2 - AXON_Body-Video 2017-08-03_1236).

Officer Parrish witnessed several pieces of evidence that corroborated McKinney's story. Sprite cans were strewn about the yard next to McKinney's vehicle, and her vehicle was damaged. (Government's Ex. 2 - AXON_Body-Video 2017-08-03_1236). McKinney's couch was stained and smelled of detergent. (Government's Ex. 2 - AXON_Body-Video 2017-08-03_1236). Parrish also found an empty dish soap bottle on the ground. (Government's Ex. 2 - AXON_Body-Video 2017-08-03_1236). However, when McKinney showed her back to Officer Parrish, there were no apparent injuries. (Government's Ex. 2 - AXON_Body-Video 2017-08-03_1236). Officer Parrish noted that it might take some time for bruising to occur. (Government's Ex. 2 - AXON_Body-Video 2017-08-03_1236). No evidence was collected from the residence.

At the end of Parrish's interaction with McKinney, he completed a Domestic Violence Lethality Screen for First Responders form for the Merryman House per Paducah Police Department policy. (Government's Ex. 3). Parrish also told McKinney that he would stay in the area and complete his paperwork parked outside her house in response to her fears that Jones would come back. (Government's Ex. 2 - AXON_Body-Video 2017-08-03_1236).

B. Jones's Subsequent Stop

After Officer Parrish had gotten inside his car and was getting ready to leave, he saw a white Chevy Suburban with two black males inside of it sitting at the intersection adjacent to McKinney's house. (Supp. Hearing R. 7: ¶ 1-19). Ms. McKinney having told Officer Parrish multiple times that she was worried Jones would come back, and the vehicle matching

3

McKiney's description, Parrish got behind the Suburban and pulled it over. (Supp. Hearing R. 7: ¶ 1-19).

Upon pulling the Suburban over, Officer Parrish approached the passenger side of the vehicle and identified the passenger as Mr. Jones, and the driver as Mr. Snipes. (Government's Ex. 2 - AXON_Body-Video 2017-08-03_1308). Jones immediately made mention of an incident with Ms. McKinney. Jones identified McKinney as his girlfriend. (Government's Ex. 2 - AXON_Body-Video 2017-08-03_1308).

Officer Parrish then asked Jones to exit the vehicle. (Government's Ex. 2 - AXON_Body-Video 2017-08-03_1308). Jones reluctantly complied. (Government's Ex. 2 - AXON_Body-Video 2017-08-03_1308). Parrish escorted Jones to Parrish's vehicle and did an initial search of his person before proceeding. (Government's Ex. 2 - AXON_Body-Video 2017-08-03_1308). Nothing was found. (Government's Ex. 2 - AXON_Body-Video 2017-08-03_1308). On the side of the road next to Parrish's vehicle, Parrish questioned Jones about McKinney's allegations. (Government's Ex. 2 - AXON_Body-Video 2017-08-03_1308). He denied everything—he didn't know anything about the sprite cans, the detergent on couch, fighting with McKinney's brothers, or throwing dish soap. (Government's Ex. 2 - AXON_Body-Video 2017-08-03_1308). Parrish then arrested Jones for fourth-degree assualt of Ms. McKinney. (Government's Ex. 2 - AXON_Body-Video 2017-08-03_1308).

Upon arrest, Jones was searched again. (Government's Ex. 2 - AXON_Body-Video 2017-08-03_1308). Nothing illegal was recovered. (Government's Ex. 2 - AXON_Body-Video 2017-08-03_1308). Jones was then placed in the back of Parrish's vehicle. After being in the back of the car for several minutes, Jones began fidgeting. (Government's Ex. 2 - AXON_Body-Video 2017-08-03_1308). When Officer Parrish opened the back door of the vehicle, Jones

started yelling that his hand cuffs were too tight. (Government's Ex. 2 - AXON_Body-Video 2017-08-03_1308). When checking Jones's cuffs, Officer Parrish found a High Point .380 firearm in the back of his police car. (Government's Ex. 2 - AXON_Body-Video 2017-08-03_1308). Jones was then taken out of the car and searched for a third time. (Government's Ex. 2 - AXON_Body-Video 2017-08-03_1308). He was less than cooperative. (Government's Ex. 2 - AXON_Body-Video 2017-08-03_1308).

    C. The Suppression Hearing

Officer Parrish was the sole witness to testify at the suppression hearing, his testimony reflected the events described above. (*See generally*, Supp. Hearing). However, one piece of Parrish's testimony is particularly relevant to the Court's analysis: Parrish testified that he stopped the Suburban for no other reason than "to further investigate the allegations made by Ms. McKinney." (Supp. Hearing R. 7: ¶ 10).

DISCUSSION

Jones's Motion to Suppress presents two issues: First, whether Officer Parrish's investigative stop of Jones was lawful. (R. 35). Second, whether Officer Parrish had sufficient probable cause to arrest Jones without a warrant. (R. 35). In post-hearing briefing, the United States argues that the investigative stop was reasonable given Parrish's suspicion that Jones had engaged in past criminal conduct, and that Parrish had sufficient probable cause to arrest Jones for fourth-degree assault. (R.36). Jones disagrees, arguing that the stop violated *Terry v. Ohio*, 392 U.S. 1 (1968) and its progeny, and that Officer Parrish knew he did not have sufficient probable cause to arrest Jones. (R. 35).

The Court will start with Parrish's warrantless investigatory stop. Jones argues that the stop violated the Fourth Amendment because Parrish, at best, only had reasonable suspicion of past criminal conduct, which is not enough to justify a warrantless stop. (R. 35). Conversely, the United States argues that the warrantless stop was justified by Parrish's reasonable suspicion that Jones had assaulted McKinney. (R. 36). The Court reluctantly disagrees.

Contrary to Jones's position that past criminal conduct does not justify a warrantless investigatory stop under the Fourth Amendment, the Supreme Court instructs in *United States v. Hensley* that investigatory stops are permitted under the Fourth Amendment provided the officer had "reasonable suspicion, grounded in specific and articulable facts," that the person stopped was involved in, or wanted in connection with, a completed crime. 469 U.S. 221, (1985). However, the Court's Instruction in *Hensley* is restricted to felonies—it does not extend to misdemeanors. *Id.* ("We need not and do not decide today whether Terry stops to investigate all past crimes, however serious, are permitted."). Similarly, while the Sixth Circuit, relying on *Hensley*, routinely upholds investigatory stops based on completed crimes, the crimes involved are always felonies—not misdemeanors, like the fourth-degree assault at issue here. The Sixth Circuit has not decided the issue of whether reasonable suspicion of a completed misdemeanor is sufficient under the Fourth Amendment to justify an investigatory stop so as to be binding on this Court. But it has addressed the issue; once in an unpublished opinion and twice in dicta.

In *United States v. Halliburton*, 966 F.2d 1454 (Table), 1992 WL 138433 (6th Cir. 1992), the Sixth Circuit directly addressed whether a completed misdemeanor justified an investigatory stop. Federal Court Security Officer, Marshal Burris stopped Fenton Halliburton to question him about suspected misdemeanor public exposure from two weeks prior. The Court held that

Burris's stopping Halliburton was unreasonable under the Fourth Amendment because it was based on a completed misdemeanor—not a completed felony. *Halliburton*, WL 138433 at *4.

Since *Halliburton*, The Sixth Circuit has addressed the issue twice—both times in dicta. In *United States v. Roberts*, 986 F.2d 1026, (6th Cir. 1993), the Sixth Circuit held that officers had not violated the defendant's Fourth Amendment rights for stopping him based on a reasonable suspicion that he was drunk. In dicta, the *Roberts* Court stated, "[i]n Hensley, the Supreme Court held that police may stop a person to investigate if they 'have a reasonable suspicion, grounded in specific and articulable facts, that a person they encounter was involved in or is wanted in connection with a completed felony,' *but not for a completed misdemeanor*." United States v. Roberts, 986 F.2d 1026, 1030 (6th Cir. 1993) (emphasis added) (citation omitted).

Similarly, in *Gaddis v. Redford Twp.*, 364 F.3d 763, 785 (6th Cir. 2004), the Sixth Circuit again determined that driving while drunk constitutes an ongoing crime for Fourth Amendment purposes. And again, in dicta and citing *Roberts*, the court stated that "[p]olice may also make a stop when they have reasonable suspicion of a completed felony, *though not of a mere completed misdemeanor*." *Gaddis,* 364 F.3d at 771 n.6 (emphasis added).

The Court notes that the Ninth and Tenth Circuits both declined to follow the Sixth Circuit's holding in *Halliburton*. Instead, those courts take the position that completed misdemeanors may justify an investigatory stop provided the government's interest in the stop outweighs the intrusion on individual freedom. *United States v. Grigg*, 498 F.3d 1070, 1081 (9th Cir. 2007); *United States v. Moran*, 503 F.3d 1135, 1141 (10th Cir. 2007). Frankly, this position is appealing. It better aligns with the Court's reasoning in *Hensley*, and in no way runs afoul of its holding.

However, district courts are obliged to follow their respective circuit courts' precedent unless that precedent has been overturned by the court of appeals sitting in banc or by a Supreme Court opinion. *See, United States v. Forman*, 990 F. Supp. 875, 882 (E.D. Mich. 1997); *See also*, *Loftus v. Southeastern Pennsylvania Transportation Authority*, 843 F. Supp. 981, 984 (E.D. Pa. 1994) (stating federal district courts must follow their respective circuit court's decision unless overruled by the Supreme Court). While the Court recognizes that the Sixth Circuit has not necessarily established binding precedent on the issue, *Halliburton,* in conjunction with the dictum from *Roberts* and *Gaddis,* is enough to convince the Court that the Sixth Circuit is more likely to find an investigative stop based on a completed misdemeanor unreasonable under the Fourth Amendment. Thus, so must this Court.

Officer Parrish's testimony at the suppression hearing makes it clear that he stopped Jones because he suspected him of fourth-degree assault in violation of Kentucky Revised Statute 508.030. (Supp. Hearing R. 7: ¶ 10) ("I got behind the vehicle and initiated a traffic stop to further investigate the allegations made by Ms. McKinney."). Fourth-degree assault is a misdemeanor. Ky. Rev. Stat. § 508.030 (2). Therefore, this Court has no choice but to find that Officer Parrish's investigatory stop violated the Fourth Amendment.

Because the initial stop violated Jones's Fourth Amendment rights, his subsequent arrest was also illegal. Therefore, all evidence recovered during the stop and subsequent arrest, including the Hi Point .380 firearm, must be suppressed as fruit of the poisonous tree. *Wong Sun v. United States*, 371 U.S. 471, 485, 9 L. Ed. 2d 441, 83 S. Ct. 407 (1963).

Because the firearm and all evidence collected from the stop must be suppressed as discussed above, to decide whether Officer Parrish had probable cause to effectuate the arrest is unnecessary. Jones's Motion to Suppress (R. 20) is granted.

CONCLUSION

Having considered the testimony and evidence presented during the suppression hearing held on July 28, 2018, and the subsequent briefing, and being otherwise sufficiently advised; IT IS HERBY ORDERED that Defendant Jermaine Jones's Motion to Suppress (R. 20) is GRANTED.

A telephonic further proceedings is set on NOVEMBER 14, 2018 at 9:15 a.m. Central Time. The Court shall place the call to counsel.

**Thomas B. Russell, Senior Judge
United States District Court**
November 5, 2018

cc: Counsel of Record