IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF KENTUCKY
PADUCAH

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    *Plaintiff,*<br>v.<br><br>JERMAINE TYRONE JONES,<br><br>    *Defendant.* | )<br>)<br>)<br>)<br>)<br>) Case No. 5:17-cr-39 (TBR)<br>)<br>)<br>)<br>)<br>) |

**MEMORANDUM OPINION & ORDER**

This matter comes before the Court upon Defendant Jermaine Tyrone Jones's Motion for New Trial, (Mot. for Trial), Dkt. 92, and Motion for Judgment of Acquittal, (Mot. for Acquittal), Dkt. 91. The Government has responded to both motions. *See* Trial Resp., Dkt. 111; *see also* Acquittal Resp., Dkt. 110. Jones has replied to both responses. *See* Reply, Dkt. 112. As such, briefing is complete and the motions are ripe for adjudication.[1]

For the reasons that follow, Defendant Jones's Mot. for Trial, Dkt. 92, is **DENIED** and Mot. for Acquittal, Dkt. 91, is **DENIED**.

**I.  FACTUAL AND PROCEDURAL BACKGROUND**

On December 12, 2017, the United States indicted Jermaine Jones on one count for knowingly possessing a firearm after having been convicted of a felony, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). *See* Indictment, Dkt. 1. A Superseding Indictment was returned on July 13, 2021, charging Jones for the same offense. *See* Superseding Indictment, Dkt. 68.

---

[1] Because Jones is represented by counsel, the Court does not consider his *pro se* letter filed on January 18, 2022. *See* Letter, Dkt. 116. This is consistent with the general rule that a district court does not consider *pro se* arguments of a party represented by counsel. *See United States v. Howton*, 260 Fed. Appx. 813, 819 (6th Cir. 2008) ("We decline to address [the defendant's pro se] arguments because [the defendant] was represented by counsel in this matter."); *United States v. Williams*, 641 F.3d 758, 770 (6th Cir. 2011) (same).

Jones's trial commenced on August 9, 2021. *See* Order, Dkt. 90. On August 10, 2021, the jury announced that it had reached a unanimous verdict and returned a verdict of guilty as to Count I in the Superseding Indictment. *See id.*

Jones has now filed two motions: one for a new trial and another for acquittal.

## II.     MOTION FOR NEW TRIAL

Federal Rule of Criminal Procedure 33(a) provides that "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." The rule "does not define 'interest[ ] of justice' and the courts have had little success in trying to generalize its meaning." *United States v. Munoz*, 605 F.3d 359, 373 (6th Cir. 2010) (quoting *United States v. Kuzniar*, 881 F.2d 466, 470 (7th Cir. 1989)). Nevertheless, case law in the Sixth Circuit clearly states that Rule 33's "interest of justice" standard "allows the grant of a new trial where substantial legal error has occurred." *Id.* A legal error is substantial if it violates a defendant's Constitutional rights or is significant enough to require reversal on appeal. *See United States v. Hall*, No. 7:14-CR-20-KKC, 2015 WL 5063324, at *5 (E.D. Ky. Aug. 26, 2015) (citing *United States v. Willis*, 257 F.3d 636, 645 (6th Cir. 2001)); *see also United States v. Paulus*, No. CR 15-15-DLB-EBA, 2017 WL 908409, at *16 (E.D. Ky. Mar. 7, 2017) (citing *Munoz*, 605 F.3d at 373). New trial motions are "disfavored and should be granted with caution," *Willis*, 257 F.3d at 645, so the defendant bears a high burden to "do more than raise a 'serious suspicion' in order to demonstrate that he is entitled to a new trial," *see United States v. Wheaton*, 517 F.3d 350, 361 (6th Cir. 2008).

Jones moves this Court for a new trial pursuant to Federal Rule of Criminal Procedure 33 due to substantial legal errors that were allegedly made at his trial. *See* Mot. for Trial.

Specifically, Jones alleges that the following errors occurred: (1) the Court gave an *Allen*[2] charge that constituted "unreasonable coercion" by "rush[ing] and forc[ing]" the jury into returning a verdict, *see* Mot. for Trial ¶ 1; (2) Jones's counsel provided ineffective assistance of counsel by not objecting to the *Allen* charge, *see id.* ¶ 2; (3) the Court improperly permitted the Government to strike a black juror from the panel, *see id.* ¶¶ 3–4; (4) Jones was "unduly prejudiced by the racial imbalance of the jury pool . . . and the petit jury," *see id.* ¶ 5; (5) the jury was prejudiced toward Jones, both because Jones was shackled in the courtroom and because the foreperson accidentally saw Jones dressed in jail cloths while in custody of the United States Marshals Service, *see id.* ¶¶ 6–7.

The Court addresses each of these alleged errors below.

### A. **Allen** *Charge*

Jones argues that the Court erred in instructing the jury to continue deliberating "at a late hour and after a long day." *See id.* ¶ 1.

When a jury has difficulty reaching a verdict, a district court may, as the Court did in this case, deliver a supplemental instruction requesting each juror to reconsider his or her respective position during continued deliberations. *See United States v. Levit*, 39 F. App'x 97, 104 (6th Cir. 2002) (citing *Allen v. United States*, 164 U.S. 492 (1896)). Such an instruction is referred to as an *Allen* charge. *See ibid.*

Jones does not argue that the *Allen* charge itself was inappropriate. *See* Mot. for Trial ¶ 1. Rather, Jones contends that the *Allen* charge was inappropriate because of the surrounding circumstances. *See id.* "Although circumstances alone can render an *Allen* charge coercive," the Sixth Circuit has "traditionally . . . found an *Allen* charge coercive when the instructions

---

[2] *Allen v. United States*, 164 U.S. 492, 501–02 (1896).

themselves contained errors or omissions, not when a defendant alleges that the circumstances surrounding an otherwise correct charge created coercion." *United States v. Frost*, 125 F.3d 346, 375 (6th Cir. 1997).

The relevant circumstances are as follows. On August 10, the jury was brought into the courtroom at 9:11 A.M. *See* Transcript of Jury Trial, (Transcript), Dkt. 100, at 2. The jury remained in the courtroom until 12:01 P.M., when the Court recessed for lunch. *See id.* at 63. The jury returned to the courtroom at 1:18 P.M. *See id.* at 66. The jury then listened to closing arguments and received its instructions, leaving for deliberations at 2:39 P.M. *See id.* at 112. Thereafter, the Court received a note from the jury stating that its "vote [was] not unanimous" and that "everyone ha[d] their verdict." *Id.* at 113. At 4:27 P.M. the Court brought the jury back into the courtroom and gave an *Allen* charge. *See id.* at 114. Four minutes later, the jury left the courtroom and returned to its deliberations. *See id.* at 116. At 5:41 P.M. the Court was informed that the jury reached a unanimous verdict, and at 5:43 P.M. the jury returned to the courtroom and announced that it had found Jones guilty as to Count I. *See id.*

To sum up: the jury had deliberated for less than two hours before the Court gave the *Allen* charge, and the jury reached a verdict just over an hour after it received the *Allen* charge. Those circumstances, along with the fact that the jury reached a verdict prior to 5:43 P.M., do not suggest that the jury was coerced into returning a verdict. *See U.S. v. Tines*, 70 F.3d 891, 896 (6th Cir. 1995) ("The timing of an *Allen* charge is left to the trial judge's sound discretion."); *United States v. Sawyers*, 902 F.2d 1217, 1220 (6th Cir. 1990) (holding that the court was within its discretion to give an *Allen* charge when the jury announced a deadlock after three hours of deliberation); *United States v. Clark*, 988 F.2d 1459, 1469 (6th Cir. 1993) (holding that an *Allen* charge was appropriate when it was given 50 minutes after the jury announced a deadlock two

days into deliberations); *In re: E. I. Du Pont De Nemours & Co. C-8 Pers. Inj. Litig.*, No. 2:13-MD-2433, 2020 WL 7863331, at *11 (S.D. Ohio Dec. 31, 2020) (quoting *Tines*, 70 F.3d at 896) ("Typically, the *Allen* charge is given 'as soon as the jury announce[s] its deadlock.' "). Further cutting against Jones's position are the facts that new trial motions are disfavored and *Allen* charges are traditionally not coercive when the instructions themselves are correct. *See Willis*, 257 F.3d at 645; *see also Frost*, 125 F.3d at 375.

Therefore, the Court concludes that giving the *Allen* charge is not a substantial legal error that merits a new trial.

B. *Ineffective Assistance of Counsel*

Jones next argues that his attorney provided ineffective assistance of counsel by failing to object to the allegedly defective *Allen* charge. *See* Mot. for Trial ¶ 2.

To prove ineffective assistance of counsel, a defendant must show two essential elements: that counsel's performance was deficient and that the deficiency prejudiced the defense to such a degree that the trial result is unreliable or considered to be unfair. *See Strickland v. Washington*, 466 U.S. 668, 686 (1984); *Bigelow v. Williams*, 367 F.3d 562, 570 (6th Cir. 2004). This standard includes a strong presumption that counsel's strategic decisions and trial performance were reasonable. *See Bigelow*, 367 F.3d at 570. Indeed, a defendant must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment . . . and that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Ross v. United States*, 339 F.3d 483 (6th Cir. 2003).

Jones does not satisfy the requirements for an ineffective assistance of counsel claim. Because the Court has already found that its *Allen* charge was proper, *see supra* Part II.A, the

5

Court concludes that the performance of Jones's counsel was not deficient. *See Strickland*, 466 U.S. at 688. To the contrary, Jones's counsel acted in accordance with prevailing professional norms. *See id.*

Accordingly, Jones is not entitled to a new trial on ineffective assistance of counsel grounds.

      C. **Batson** *Challenge*

Jones argues that the Court did not follow correct procedure and improperly allowed the government to strike Juror #154, who is black, from the panel. Mot. for Trial ¶¶ 3–4.

In *Batson v. Kentucky*, the Supreme Court held that a prosecutor violates the Equal Protection Clause by challenging potential jurors on account of their race. 476 U.S. 79, 89 (1986). *Batson* claims are evaluated under a now familiar three-step inquiry. First, the moving party (the opponent of the strike) must "make out a prima facie case of purposeful discrimination by showing that the totality of the relevant facts gives rise to an inference of discriminatory purpose." *Id.* at 93–94. Second, once the moving party has made out a prima facie case, "the burden shifts to the [non-moving party] to come forward with a [race-]neutral explanation" for the challenge. *Id.* at 97. Third, if the non-moving party meets its burden at step two, "the trial court then [has] the duty to determine if the [moving party] has established purposeful discrimination." *Id.* at 98.

The Government does not dispute that step one of the *Batson* inquiry is satisfied. *See* Trial Resp. at 8. The Court therefore proceeds to step two.

Step two asks whether the Government has provided a race-neutral explanation for the challenge. The Court finds that the Government has done so. The Government states that it struck Juror #154 for not accurately responding to a question relating to involvement in lawsuits

or disputes with governmental agencies. *See id.* Furthermore, the Government notes that the agency in question was the Paducah Housing Authority, a governmental entity within the City of Paducah, which is the same city that employs the police officers and other witnesses that arrested Jones. *See id.* at 8–9. Here, the Government suggests that Juror #154 could possibly have been biased against its witnesses. *See id.* That reasoning is race neutral. On to step three.

Jones's argument falters at step three, where he is required to establish purposeful discrimination. Jones first contends that the Government "did not run [CourtNet searches] on *all* of the white jurors." Mot. for Trial ¶ 5 (emphasis added). However, the Government now claims that it performed CourtNet searches on "all prospective jurors." Dycus Aff., Dkt. 111-1, ¶ 3.[3] The Government maintains that "all prospective jurors in the case were run through the system." Trial Resp. at 9. Furthermore, the Government states that it struck two non-minority jurors for the same reason that Juror #154 was struck, *i.e.*, failing to disclose disputes that were discovered through the use of CourtNet searches. *See id.* at 7. And on top of that, the Government did not strike any other black juror. *See id.* at 9. Jones also emphasizes that the Government did not question Juror #154 further. *See* Mot. for Trial ¶ 3. But failure to ask more questions does not turn the Government's race-neutral reasoning into purposeful discrimination. *See* Trial Resp. at 9. Similarly, Jones contends that Juror #154 actually answered the voire dire question accurately, because the juror was a *defendant* in those civil actions yet the question only asked about claims the jurors might have made *against* the federal government. *See* Mot. for Trial ¶ 3. But even if the Court adopts Jones's interpretation of the question, Jones's argument still doesn't respond to the Government's race-neutral reasoning that Juror #154 could have been

---

[3] This position does not conflict with the Government's statements during trial. At that time, the Government stated that it could not "conclusively" say that it ran CourtNet searches on "all" prospective jurors, but that it could say with certainty that it ran CourtNet searches on "many" other jurors. *See* Mot. for Trial at 6–7.

7

biased by those disputes with a local governmental agency. Jones's arguments therefore do not show purposeful discrimination.

Hence, there was no *Batson* error that warrants a new trial.

### D. Taylor/Duren *Challenge*

Jones argues here that "he was unduly prejudiced by the racial imbalance of the jury pool (57 Caucasian and 3 African-Americans) and the petit jury (11 Caucasian and 1 African-American)." Mot. for Trial ¶ 5.

The Sixth Amendment guarantees all criminal defendants the right to an "impartial jury of the state and district wherein the crime shall have been committed." U.S. CONST. amend. VI. In *Taylor v. Louisiana*, 419 U.S. 522 (1975), the Supreme Court held that the right to an impartial jury requires that the jury be drawn from a representative cross-section of the population. *Id.* at 528. In *Duren v. Missouri*, 439 U.S. 357, 364 (1979), the Supreme Court laid out a three-pronged test to determine whether a defendant's right to a jury chosen from a fair cross-section of the community has been violated:

> (1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process.

*Id.* at 364. The government may rebut this *prima facie* case by showing that "a significant state interest [is] manifestly and primarily advanced by those aspects of the jury-selection process . . . that result in the disproportionate exclusion of a distinctive group." *Id.* at 367–68.

Jones has not established *Duren*'s third prong, *i.e.*, that the alleged underrepresentation in the jury pool was due to a systematic exclusion of blacks in the jury selection process. In fact, Jones fails to make any showing whatsoever of systematic exclusion. *See* Mot. for Trial ¶ 5.

8

Rather than provide evidence that the alleged underrepresentation was inherent in the jury selection process, Jones simply asserts that the jury pool contained an unusual number of white jurors. *See id.* This proposition, however, does not satisfy the third prong of the *Duren* test.

Jones's allegation regarding the petit jury does not fare any better, because in *Taylor* the Supreme Court "emphasized that in holding that petit juries must be drawn from a source fairly representative of the community we impose no requirement that petit juries actually chosen must mirror the community and reflect the various distinctive groups in the population." 419 U.S., at 538.

Accordingly, Jones's allegations of underrepresentation in the jury pool and on the petit jury do not warrant a new trial.

### E. *Prejudicial Exposure to Jury*

Finally, Jones claims that the jury was improperly prejudiced against him for two reasons: first, because Jones was shackled in the courtroom; and second, because the jury foreperson accidentally saw Jones wearing jail clothes while in the custody of United States Marshals. *See* Mot. for Trial ¶¶ 6–7.

First, Jones asks for a new trial because he was shackled in the courtroom. *See* Mot. for Trial ¶ 7. Importantly, Jones does not allege, and the record does not suggest, that he objected to the issue of shackles during the trial (when the alleged misconduct could have been remedied). *See id.* This undermines Jones's argument that the alleged shackling violated his Constitutional rights or prejudiced the jury. *See United States v. Maddox*, No. 2:09-CR-045, 2019 WL 1291803, at *10 (E.D. Tenn. Mar. 20, 2019). Furthermore, the Sixth Circuit long ago concluded that "a brief and fortuitous [viewing of the defendant in shackles] is not prejudicial and requires an affirmative showing of prejudice by the defendant." *Keys v. Booker*, 798 F.3d 442, 455 (6th

Cir. 2015) (quoting *Kennedy v. Cardwell*, 487 F.2d 101, 109 (6th Cir. 1973)). Jones does not specify how long the jury might have been able to see the shackles. Generalized allegations such as these do not raise more than a "serious suspicion" of misconduct, nor do they "*prove*" that the jury was prejudiced. *Wheaton*, 517 F.3d at 362.

Second, Jones asks for a new trial because the jury foreperson allegedly saw him in jail clothes in the custody of United States Marshals. *See* Mot. for Trial ¶ 6. It is true that "the State cannot, consistently with the Fourteenth Amendment, compel an accused to stand trial before a jury while dressed in identifiable prison clothes." *Estelle v. Williams*, 425 U.S. 501, 512 (1976). However, "failure to make an objection to the court as to being tried in such clothes, *for whatever reason*, is sufficient to negate the presence of compulsion necessary to establish a constitutional violation." *Id.* at 512–13 (emphasis added). Jones does not claim that either he or counsel objected to this issue at trial, *see* Mot. for Trial; indeed, the Government claims that this issue was not brought to the attention of the Court, *see* Trial Resp. at 10. Therefore, whether or not the jury foreperson actually witnessed Jones in his jail clothes, the Court finds that there is no constitutional violation because the record does not show that Jones made an objection about this issue at trial. Furthermore, the Jones's allegations seem to allege that the jury foreperson only briefly and inadvertently saw him in jail clothes, which further diminishes the force of his argument. *See Jalowiec v. Bradshaw*, No. 1:03 CV 0645, 2008 WL 312655, at *58 (N.D. Ohio Jan. 31, 2008) ("[W]hen the jurors' view of the defendant in custody was brief, inadvertent, and outside the courtroom, the risk of prejudice is slight."), *aff'd*, 657 F.3d 293 (6th Cir. 2011).

The alleged prejudicial exposure to the jury does not merit a new trial.

### III.     MOTION FOR ACQUITTAL

Federal Rule of Criminal Procedure 29 provides that the Court may set aside a guilty verdict and enter an acquittal.  Under Rule 29(c), a defendant's burden is a heavy one: in addressing a motion for a judgment of acquittal, the Court must consider the evidence in the light most favorable to the prosecution, inquiring whether the evidence offered at trial was sufficient to convince a rational trier of fact beyond a reasonable doubt that all elements of the charged crimes have been established.  *See United States v. Graham*, 622 F.3d 445, 448 (6th Cir. 2010).  However, the Court must not weigh the evidence, consider the credibility of witnesses, or substitute its judgment for that of the jury.  *See United States v. Chavis*, 296 F.3d 450, 455 (6th Cir. 2002).  The Court affords the Government "the benefit of all inferences which can reasonably be drawn from the evidence, even if the evidence is circumstantial." *United States v. Carter*, 355 F.3d 920, 925 (6th Cir. 2004).  A judgment will be reversed due to insufficient evidence "only if [the] judgment is not supported by substantial and competent evidence upon the record as a whole." *United States v. Barnett*, 398 F.3d 516, 522 (6th Cir. 2005).

Jones contends that the Government's evidence was insufficient to prove beyond a reasonable doubt that he had violated 18 U.S.C. §§ 922(g)(1) and 924(a)(2).  *See* Mot. for Acquittal.  Specifically, Jones insists that the evidence showed that he did not possess the firearm prior to or at the time of his arrest.  *See id.* at 2–3.  Here, Jones emphasizes the fact that neither Ms. McKinney nor any of her brothers ever claimed that Jones used or displayed a weapon during their confrontation.  *See id.*  Jones also discusses the fact that he was handcuffed and searched by officers twice before being put in a squad car, and "it is simply not credible that [o]fficers could have missed the weapon during such thorough searches." *Id.* at 3.  Jones also challenges the "notable lack of evidence" because no fingerprint or DNA analysis was ever done,

11

the Government failed to produce William Snipes as a witness, and the Government's video footage was lacking in "quality." *Id.* at 4–5.

Nevertheless, Officer Parrish testified at trial that as he was reaching to check Jones's handcuffs, he "felt a firearm in [Jones's] waistband." Transcript at 20; *see also* Acquittal Resp. at 2–3. Officer Parrish repeated that the firearm was "underneath [Jones's] waistband. It was underneath the pants that he was wearing." Transcript at 20–21. Furthermore, Officer Parrish's body worn camera footage does not conflict with this testimony. *See id.* at 23–24. And on top of that, Officer Parrish identified, in court, the firearm that he claimed to have removed from Jones's waistband. *See id.* at 24–25.

Because the Government enjoys the benefit of all inferences which can reasonably be drawn from the evidence, the Court finds that the evidence against Jones was sufficient. *See Barnett*, 398 F.3d at 522. To the extent that Jones argues that Officer Parrish's testimony was not credible, the Court will not disturb the jury's determination that the testimony was credible. *See United States v. Henderson*, 174 F. App'x 880, 886 (6th Cir. 2006); *see also Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (stating that the trier of fact has the responsibility "to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts."). In short: Officer Parrish testified that he removed the firearm from Jones's waistband, meaning that Officer Parrish actually identified Jones as possessing the firearm. *See Henderson*, 174 F. App'x at 886. That testimony, when viewed in the light most favorable to the prosecution, is enough to conclude that the evidence offered at trial was sufficient to demonstrate to a rational jury beyond a reasonable doubt that Jones had violated 18 U.S.C. §§ 922(g)(1) and 924(a)(2). *See United States v. Graham*, 622 F.3d 445, 448 (6th Cir. 2010).

Therefore, the Court denies Jones's motion for acquittal.

IV.     **CONCLUSION**

For the above stated reasons, **IT IS HEREBY ORDERED** that Defendant Jones's Mot. for Trial, Dkt. 92, is **DENIED** and Mot. for Acquittal, Dkt. 91, is **DENIED**.

The parties shall submit their **SENTENCING MEMORANDA** on or before **MARCH 10, 2022**. The **SENTENCING HEARING** is scheduled for **MARCH 22, 2022 at 2:00 PM**.

   **IT IS SO ORDERED**

**Thomas B. Russell, Senior Judge**
**United States District Court**

January 27, 2022

cc: Counsel/AUSA